# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

M.M.E., a minor, by and through her
Guardian ad Litem, Yvonne Flores,

Plaintiff,

v.

COUNTY OF SAN BERNARDINO,
by and through THE SAN
BERNARDINO COUNTY
DEPARTMENT OF CHILDREN
AND FAMILY SERVICES;
MELISSA ERB, an individual;
ANA FIGUEROA, an individual;
NEW BEGINNING FFA, a business
entity form unknown; and
DOES 1 through 50, inclusive,

Defendants.

Case No. 5:22-cv-00520-JWH-KK

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF
No. 59]**

# I.  SUMMARY OF DECISION

Before the Court is the motion for summary judgment filed by Defendants County of San Bernardino, Melissa Erb, and Ana Figueroa against minor Plaintiff M.M.E.[1]  In this civil rights case, M.M.E.—proceeding through a guardian *ad litem*—asserts that Defendants are liable for abuse that M.M.E. suffered while she was in the custody of a foster parent—non-party Aretha Hughes.  After considering the papers filed in support and in opposition,[2] as well as the argument of counsel, the Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

# II.  BACKGROUND

## A.    Procedural History

M.M.E. initiated this action in March 2022 by filing a Complaint against the County of San Bernardino, San Bernardino County Department of Children and Family Services ("DCFS"); Melissa Erb; Ana Figueroa; New Beginning FFA; and Does 1-50.[3]  The Court previously granted New Beginning FFA's motion to dismiss, which removed New Beginning FFA from the case.[4]  M.M.E. asserts the following four claims for relief[5] against the remaining Defendants:

- violation of civil rights (42 U.S.C. § 1983)—Fourteenth Amendment—Familial Association;
- violation of 42 U.S.C. § 1985;
- violation of 42 U.S.C. § 1986; and
- *Monell*-related claims, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

---

[1]     Defs.' Mot. for Summary J. (the "Motion") [ECF No. 59].

[2]     The Court considered the documents of record in this action, including the following papers:  (1) Compl. (the "Complaint") (including its attachments) [ECF No. 1]; (2) Motion (including its attachments); (3) Joint Statement of Undisputed and Genuine Disputes (the "Joint Statement") [ECF No. 61]; (4) Joint Exhibits [ECF No. 58]; (5) Pl.'s Opp'n to the Motion (the "Opposition") (including its attachments) [ECF No. 63]; and (6) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 64].

[3]     *See generally* Complaint.

[4]     Order Granting Mot. to Dismiss (In Chambers) [ECF No. 45].

[5]     *See* Complaint ¶¶ 41-70.

Defendants filed the instant Motion for summary judgment in October 2023, and it is fully briefed.[6]  The Court conducted a hearing on the Motion in November 2023.

## B.  Factual Allegations

M.M.E. was born on March 8, 2017.[7]  That same month, Defendant Erb, a social services practitioner for DCFS,[8] investigated a general neglect referral regarding M.M.E.'s mother, Yvonne Flores.[9]  Ultimately, the allegations underlying that referral were determined to be unfounded.[10]

In October 2018, Erb was assigned to investigate a claim that M.M.E. was being sexually abused by M.M.E.'s grandfather.[11]  During that investigation, Erb believed that M.M.E.'s mother—Flores—was under the influence of drugs.[12]  After Erb consulted with her supervisor, Erb determined that M.M.E. was unsafe in Flores's care.[13]

On November 6, 2018, M.M.E. "was placed on an emergency and temporary basis" with a relative, non-party Crystal Knowles.[14]  However, for an unspecified reason, Riverside County placed a "hold" on Knowles's home.[15]  Two days later, Erb removed M.M.E. from Knowles's home and placed her in the home of a foster parent, non-party Hughes.[16]  Hughes was a licensed foster parent who had been previously approved by New Beginning FFA.[17]  Hughes "was then approved" by DCFS to have children placed in her home.[18]  DCFS determined that Hughes' home was a safe home for children.[19]

---

[6]      *See generally* Motion; Opposition; Reply.

[7]      Joint Exhibits, Ex. F ("Exhibit F") [ECF No. 58-6].

[8]      Decl. of Melissa Erb in Supp. of the Motion [ECF No. 59-1] ¶ 1.

[9]      *See* Joint Statement No. 4; Opposition 8:28-9:1; Joint Exhibits, Ex. D ("Exhibit D") [ECF No. 58-4].

[10]     *See* Joint Statement No. 9; Opposition 9:1-3; Exhibit D.

[11]     Joint Statement No. 5.

[12]     *Id.*, No. 8; *see* Opposition 9:10-11.

[13]     Joint Statement Nos. 10-12; *see* Opposition 9:12-14.

[14]     Joint Statement No. 14.

[15]     *Id.*, No. 16; *see* Opposition 9:18.

[16]     *Id.*, No. 27.

[17]     *Id.*, Nos. 23 & 24.

[18]     *Id.*, No. 25.

[19]     *Id.*, No. 26.

On November 9, 2018, the Juvenile Dependency Court in San Bernardino County "ordered M.M.E. detained from her parents."[20]  Defendant Figueroa, a social services practitioner for DCFS,[21] then became involved in M.M.E.'s case "after the Detention hearing when the case was transferred from Ms. Erb."[22]  On November 27, 2018, M.M.E. underwent a well-baby exam, which determined that M.M.E. was normal except that the examining doctor found that M.M.E. had anemia.[23]  During M.M.E.'s placement at the Hughes home, Flores had supervised parental visits with M.M.E., which Figueroa also attended.[24]  M.M.E. remained at the Hughes home until December 10, 2018.[25]

On December 10, 2018, "arrangements were then made for [Knowles] to pick M.M.E. up at the County's CFS office and that was done."[26]  That same day, Figueroa "noted something on [M.M.E.'s] cheek."[27]  When Figueroa looked from a different angle, she noticed that M.M.E.'s cheek had a "rose color."[28]  But Figueroa assumed that the cold weather caused the mark on M.M.E.'s cheek.[29]

When Knowles resumed custody of M.M.E., Knowles discovered suspicious marks and bruises on M.M.E.'s body,[30] which Knowles reported to the Child Abuse Hot Line the next day.[31]  In response to the hotline call, an Emergency Response Referral Information Form (the "Referral") was generated.  The Referral indicated the following instances of alleged neglect and abuse regarding prior foster children:

- Referral Date:  02/18/2012; Allegation Type:  General Neglect [twice]; Allegation Disposition [Blank].

---

[20]    *See id.*, No. 33; Joint Exhibits, Ex. I ("Exhibit I") [ECF No. 58-9].  Although the parties fail to provide any information or explanation in the Joint Statement, it appears that M.M.E.'s father was in custody, in state prison, throughout the relevant time period.  *See* Joint Exhibits, Ex. N ("Exhibit N") [ECF No. 58-14].

[21]    Decl. of Ana Figueroa in Supp. of the Motion [ECF No. 59-2] ¶ 1.

[22]    Joint Statement No. 40.

[23]    *Id.*, No. 53.

[24]    *Id.*, No. 49.

[25]    *Id.*, No. 58.

[26]    *Id.*, No. 57.  A Jurisdiction Disposition hearing was also conducted that day.  *See* Exhibit N.

[27]    Joint Exhibits, Ex. V ("Exhibit V") [ECF No. 58-22].

[28]    *Id.*

[29]    *Id.*

[30]    Joint Statement No. 59.

[31]    Joint Exhibits, Ex. Q ("Exhibit Q") [ECF No. 58-17].

- Referral Date:  03/24/2009; Allegation Type:  General Neglect; Allegation Disposition [Blank].
- Referral Date:  09/17/2012; Allegation Type:  General Neglect; Allegation Disposition: Unfounded.
- Referral Date:  02/18/2012; Allegation Type:  General Neglect; Allegation Disposition: Unfounded.
- Referral Date:  08/23/2012; Allegation Type:  General Neglect; Allegation Disposition [Blank].
- Referral Date:  07/25/2012; Allegation Type:  General Neglect and Physical Abuse; Allegation Disposition: Unfounded [both].
- Referral Date:  04/12/2012; Allegation Type:  General Neglect; Allegation Disposition:  Unfounded.
- Referral Date:  05/25/2012; Allegation Type:  General Neglect; Allegation Disposition:  Unfounded.
- Referral Date:  06/21/2012; Allegation Type:  General Neglect; Allegation Disposition:  Unfounded.[32]

On December 13, 2018, M.M.E. "underwent a forensic examination" which generated the preliminary findings that the marks on M.M.E. were suspicious and that they could be evidence of physical and sexual abuse.[33]  The County launched an investigation, as reflected in the document entitled "Investigation Narrative."[34]  The Investigation Narrative references six prior referrals:

- 02/18/12 General Negligence Unfounded.
- 04/12/12 General Negligence Unfounded.
- 05/25/12 General Negligence Unfounded.
- 06/21/12 General Negligence Unfounded.
- 07/25/12 General Negligence/Physical Abuse Unfounded.
- 09/17/12 General Negligence Unfounded.[35]

A Child Abuse or Severe Neglect Indexing Form (the "CASNI Form") dated February 11, 2019, notes that the date of incident was December 1, 2018.[36]

---

[32]   *Id.*

[33]   Joint Statement No. 60; *see also* Opposition 7:24-25.

[34]   Joint Exhibits, Ex. R ("Exhibit R") [ECF No. 58-18].

[35]   *Id.*  Those six instances also appear in the Referral.

[36]   Joint Exhibits, Ex. S ("Exhibit S") [ECF No. 58-19].

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines the facts that are material.  *See id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  Factual disputes that are "irrelevant or unnecessary" are not counted.  *Id.*  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *See id.* at 325.  Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case.  *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  *See Celotex*, 477 U.S. at 324.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).  The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Advisory

Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56.  Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c), which requires they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

## IV.  ANALYSIS

### A.   First Claim for Relief:  42 U.S.C. § 1983

#### 1.   Legal Framework

Under 42 U.S.C. § 1983, a defendant, acting under color of state law, may be held liable for causing a deprivation of the plaintiff's federal rights.  A constitutional deprivation is "caused" when a person:  (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (citation omitted).  The statute is "a method for vindicating federal rights elsewhere conferred[.]" *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

Qualified immunity may shield a government official from liability for civil damages in a § 1983 claim.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "To determine whether qualified immunity applies, we ask whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was 'clearly established' at the time of the conduct at issue." *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020).  To determine whether the law was clearly established, courts do not "require a case directly on point," but existing precedent must have placed "the constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  When this test is properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted).

The "general rule is that the Fourteenth Amendment does not impose a duty on government officers to protect individuals from third parties." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007).  The two exceptions to this general rule are:  (1) the special relationship doctrine; and (2) the state-created danger doctrine. *See id.* at 1092.

"If either exception applies, a state's omission or failure to protect may give rise to a § 1983 claim." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011). The Court addresses each of these exceptions in turn.

## 2. Application

### a. Special Relationship Doctrine

"To determine whether qualified immunity protects officials acting within the context of a foster child relationship, a court should (1) 'determine[] the contours of a foster child's clearly established rights . . . under the 'special relationship' doctrine of substantive due process' and (2) 'examine[] whether a reasonable official would have understood that the specific conduct alleged by [the plaintiff] violated those rights.'" *Shane v. Cnty. of San Diego*, 2023 WL 4055706, at *4 (S.D. Cal. June 16, 2023) (citing *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012)).

First, the Court determines the contours of M.M.E.'s clearly established rights under the special relationship doctrine. The "special relationship doctrine applies to children in foster care." *Henry A.*, 678 F.3d at 1000. "Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb by & through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010) (citation omitted). "Conduct that 'shocks the conscience' is 'deliberate indifference to a known or so obvious as to imply knowledge of, danger.'" *Id.* (citation omitted). The "deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Id.* at 845 (citation omitted).

In "[p]ast cases which found that officials were deliberately indifferent to a threat of harm[,]" the "officials had access to several reports of abuse that were either substantiated or contained strong indicia of reliability." *Ansara v. Maldonado*, 647 F. Supp. 3d 958, 975-76 (D. Nev. 2022) (appeal dismissed). For example, a case worker acts with deliberate indifference if the case worker is aware of "numerous 'red flags'" concerning the foster parent's capacity and performance. *See E.F. v. Evans*, 2021 WL 4255048, at *12 (D. Or. Sept. 17, 2021) (finding that a case worker was not entitled to qualified immunity because the case worker was aware of the foster parent's history of sexual abuse, lack of financial resources and appropriate housing, discussion of

inappropriate sexual topics and suicide with the boys, and own admission of the use of physical discipline); *J.M.M. v. Hernandez*, 151 F. Supp. 3d 1125, 1132 (D. Nev. 2015) (denying summary judgment when the child sustained severe burns and the social worker testified that she observed no marks on the child's body even though she watched the foster parent change his clothes, and those marks would have been visible).

However, a social worker may be entitled to summary judgment when there is only scant or unsubstantiated evidence of abuse and the social worker took affirmative actions to corroborate the allegations of abuse. *See, e.g.*, *Ansara*, 647 F. Supp. 3d at 976 (granting summary judgment when the defendants "received a single anonymous uncorroborated phone call alleging that [the foster parent] engaged in substance and domestic abuse" and the defendants conducted two unscheduled visits to the home to verify the allegations in the call); *Burr v. Clark Cnty. Dep't of Fam. Servs.*, 2023 WL 5940017, at *6 (D. Nev. Sept. 12, 2023) (finding that the city defendants were entitled to qualified immunity when they conducted a body investigation of the child and questioned the foster parent the same day that it was reported that the child accidentally spilled hot coffee on himself, and the city defendants conducted multiple unscheduled home visits to check on the child).

After determining the extent of M.M.E.'s clearly established rights, the Court examines whether a reasonable official would have understood that the specific conduct alleged by M.M.E. violated her rights. The undisputed facts demonstrate that Hughes was a licensed foster parent whose home had been determined by the County to be a safe home for children.[37] Even though Hughes had prior referrals, the record demonstrates that those referrals occurred at least six years before M.M.E.'s placement, only one referral was for physical abuse, and all of the referrals were disposed of as unfounded except for two referrals for which the allegation disposition was blank.[38] This proffered evidence does not support M.M.E.'s arguments that "[p]lacement at the Hughes foster home was dangerous" and that Defendants "were unfazed and deliberately indifferent to these glaring red flags."[39] The instant case is distinguishable from prior cases denying qualified immunity when officials "received multiple threats of abuse that were substantiated or came from reliable sources." *Ansara*, 647 F. Supp. 3d at 975 (collecting cases). Rather, the facts of this case demonstrate that Erb did not act with deliberate indifference by placing M.M.E. in the Hughes home.

The record shows that, throughout M.M.E.'s placement in the Hughes home, County employees saw M.M.E.; Flores saw M.M.E. during supervised visits; and a doctor saw M.M.E. for M.M.E.'s well-baby exam on November 27, 2018. There is no

---

[37]    Joint Statement Nos. 22-26.

[38]    *See* Exhibits Q & R.

[39]    Opposition 10:1-7.

evidence that any of those adults reported that M.M.E. suffered abuse during her placement at the Hughes home. The Court is unpersuaded that the CASNI Form shows that Defendants were aware of any allegations of abuse during her placement. Even though the CASNI Form, dated February 2019, indicates that the "date of incident" was December 1, 2018,[40] there are no additional details provided and there is no other evidence of record indicating that Erb and Figueroa were aware of any abuse allegations until after M.M.E. left the Hughes home. On December 10, 2018, Figueroa noted that M.M.E. had a rose-colored mark on her cheek, but Figueroa concluded that that mark was likely due to the cold weather.[41] Even if Figueroa's conclusion was incorrect, there is not enough evidence for a reasonable jury to determine that Figueroa's conclusion was unreasonable or that it somehow violated M.M.E.'s Fourteenth Amendment rights. Further, as soon as Knowles reported the alleged abuse, Defendants took affirmative actions to investigate those allegations. *See Ansara*, 647 F. Supp. 3d at 976 (noting that "unlike the officials in cases which found deliberate indifference" where the officials "failed to respond to these reports[,]" the officials in the *Ansara* case "took affirmative actions to corroborate the allegations of abuse lodged against" the foster parent). Even construing the record in the light most favorable to M.M.E., the facts do not show that any Defendant acted with deliberate indifference. Therefore, Erb and Figueroa are entitled to qualified immunity with respect to M.M.E.'s Fourteenth Amendment claim under the special relationship doctrine.

### b. State-Created Danger Doctrine

"The state-created danger exception applies 'when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger.'" *D.C. by & through Cabelka v. Cnty. of San Diego*, 445 F. Supp. 3d 869, 888 (S.D. Cal. 2020) (citing *Patel*, 648 F.3d at 971-72). This exception applies only when: (1) "there is affirmative conduct on the part of the state in placing the plaintiff in danger"; and (2) "the state acts with deliberate indifference to a known or obvious danger." *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (citation omitted). Under the state-created danger doctrine, a state actor "may be liable for actions that create or increase a known or obvious danger to an individual that he or she would otherwise not face." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1067 (9th Cir. 2006).

"The Ninth Circuit law on the 'state-created danger' doctrine makes clear that social workers cannot place foster children where they will meet affirmative dangers such as an abusive foster parent." *Shane*, 2023 WL 4055706, at *6. In *Henry A.*, the Ninth Circuit held that the plaintiffs stated a claim under this doctrine when the defendants

---

40    Exhibit S.

41    Exhibit V.

"knew of the danger of abuse and neglect" that the plaintiffs faced in certain foster homes but acted "with deliberate indifference by exposing [the plaintiffs] to that danger anyway[.]" *Henry A.*, 678 F.3d at 1003. In *Tamas*, the Ninth Circuit held that the plaintiff stated a claim under this doctrine when the defendants received referrals reporting physical and sexual abuse by the foster parent, but the state approved the foster care and adoption by the foster parent, which "created a danger of molestation that [the child] would not have faced had the state adequately protected her as a result of the referrals." *Tamas*, 630 F.3d at 844; *see also D.C. by & through Cabelka*, 445 F. Supp. 3d at 891 ("Based on the body of state-created danger caselaw, the Social Worker Defendants were on notice that placing and maintaining a foster child with a known history of sexually abusing his male foster siblings in a home with three young boys would violate the young boys' rights to due process.").

After determining the extent of M.M.E.'s clearly established rights under the state-created danger doctrine, the Court examines whether a reasonable official would know that his or her conduct surrounding M.M.E.'s care violated those rights. As described above, the evidence does not show that any Defendant acted with deliberate indifference to a known or obvious danger. Instead, the record demonstrates that Hughes was a licensed and approved foster parent; the prior referrals against Hughes were determined to be unfounded except for two instances in which the allegation dispositions were blank; multiple adults saw M.M.E. throughout her placement at the Hughes home and none reported abuse; and, as soon as Knowles reported the alleged abuse, Defendants launched an investigation. The record does not show that Defendants "were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed" or that Defendants "actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F.3d at 845 (citation omitted). Further, the evidence does not demonstrate that any danger posed by Hughes was known or obvious. Accordingly, Erb and Figueroa are entitled to qualified immunity with respect to M.M.E.'s Fourteenth Amendment claim under the state-created danger doctrine.

Therefore, the Court concludes that Erb and Figueroa are entitled to qualified immunity with respect to M.M.E.'s § 1983 claim under the Fourteenth Amendment. Accordingly, the Court **GRANTS** Defendants' Motion with respect to M.M.E.'s § 1983 claim.

## B.   Second and Third Claims for Relief:  42 U.S.C. §§ 1985 & 1986

### 1.   Legal Framework

Section 1985 of Title 42 "proscribes conspiracies to interfere with civil rights." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). "A claim brought

under the first and second clauses of section 1985(2) requires a direct or indirect purpose to deprive any persons of the equal protection of the laws, or the equal privileges or immunities under the laws and a class race-based animus." *Id.* The elements of a § 1985(3) claim are "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). "Each member of the conspiracy 'must have knowledge of the nature and scope of the agreement.'" *Ctr. for Legal Stud., Inc. v. Lindley*, 64 F. Supp. 2d 970, 979 (D. Or. 1999), *aff'd*, 1 F. App'x 662 (9th Cir. 2001) (citation omitted). "A mere allegation of conspiracy without factual specificity is insufficient." *Cardenas v. Cnty. of Tehama*, 476 F. Supp. 3d 1055, 1069 (E.D. Cal. 2020) (citation omitted).

Section 1986 of Title 42 provides a claim for relief for damages under 42 U.S.C. § 1985. *See I.H. by & through Hunter v. Oakland Sch. for Arts*, 234 F. Supp. 3d 987, 994 (N.D. Cal. 2017). A "cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). "A valid claim for relief under § 1985 is therefore a condition precedent for any action under § 1986." *Cardenas*, 476 F. Supp. 3d at 1069-70.

### 2. Application

After reviewing the facts and relevant law, the Court concludes that there is no genuine dispute of material fact regarding M.M.E.'s § 1985 claim, and Defendants are entitled to judgment as a matter of law. M.M.E.'s allegations of conspiracy lack factual support. Regarding the first element, M.M.E. argues that a meeting of the minds occurred because Erb and Figueroa "mutually executed placement agreements, case transfer procedures, and foster home placement recommendations."[42] But there is no evidence of a meeting of the minds to interfere with M.M.E.'s civil rights. *See Sanchez*, 936 F.2d at 1039. Instead, the evidence of record shows that Erb believed that M.M.E. was unsafe in Flores's home and that the Juvenile Dependency Court ordered M.M.E. to be detained from her parents. With respect to the second element, M.M.E. argues that Defendants committed affirmative acts in furtherance of their conspiracy because (1) Erb placed M.M.E. into protective custody; (2) Erb "claimed to have found a hold to take M.M.E. from" Knowles; and (3) "Erb and Figueroa endorsed a highly suspected abusive foster parent to abuse of M.M.E."[43] Even though Defendants engaged in affirmative acts, there is no evidence to show that Defendants engaged in affirmative acts ***in furtherance of their conspiracy***. Defendants argue, and the Court agrees, there is no evidence that Erb "acted with any kind of intent to conspire with anyone" and that M.M.E. has cited no

---

[42]     Opposition 18:20-23.

[43]     *Id.* at 18:24-19:1.

evidence stating that Erb and Figueroa "conspired to do this."[44]  Therefore, even if a resulting injury occurred, there is no genuine dispute of material fact regarding M.M.E.'s § 1985 claim because there is no evidence of a conspiracy.  Because M.M.E.'s § 1985 claim fails, her § 1986 claim must also fail.

Accordingly, the Court **GRANTS** Defendants' Motion with respect to M.M.E.'s § 1985 and § 1986 claims.

**C.    Fourth Claim for Relief:  *Monell* Theory**

A municipal entity may not be liable under § 1983 unless the alleged constitutional deprivation "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Monell*, 436 U.S. at 690-91.

M.M.E. argues that the County "had a practice of omission that amounted to deliberate indifference" by "overlooking glaring red flags signaling an obvious high risk of abuse" evidenced by approving "foster parents with a multitude of County CFS referrals alleging general neglect and physical abuse" and placing children "in dangerous foster homes."[45]  But M.M.E. has not supported those conclusory allegations with any evidence.  As Defendants argue, there is no evidence to show "any unconstitutional policy regarding placement of foster children in homes" or "a custom or practice to deprive foster children of safety in a home[.]"[46]  Further, there is no evidence of an omission amounting to deliberate indifference.  As discussed above, the Court has concluded that Defendants did not act with deliberate indifference with respect to M.M.E.'s care.  Therefore, there is no genuine dispute of material fact with respect to the *Monell* claim, and Defendants are entitled to judgment as a matter of law.  Accordingly, the Court **GRANTS** Defendants' Motion with respect to that claim.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Defendants' instant Motion for summary judgment is **GRANTED**.

---

[44]    Reply 8:16-22.

[45]    Opposition 20:14-27.

[46]    Reply 9:3-5.

2.    Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:  December 27, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE